UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

| | | |
|---|---|---|
| S.J.A. LINES, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 3:25-CV-261-CHB |
| | ) | |
| v. | ) | |
| | ) | **MEMORANDUM OPINION AND** |
| COMMISSIONER OF SOCIAL | ) | **ORDER** |
| SECURITY, | ) | |
| | ) | |
| Defendant. | ) | |

*** *** *** ***

Claimant filed this action seeking review of the decision by Defendant Commissioner of Social Security to deny his applications for a period of disability and disability insurance under Title II of the Social Security Act and for supplemental security income under Title XVI of the Social Security Act for lack of disability. [R. 1, p. 1]. Claimant submitted his Fact and Law Summary on August 7, 2025, [R. 12], and the Commissioner submitted their Fact and Law Summary on August 20, 2025, [R. 14], to which Claimant replied on September 3, 2025. [R. 15]. Magistrate Judge Edwards issued her Findings of Fact, Conclusions of Law, and Recommendation (hereinafter, "Recommendation") on January 6, 2026, recommending that the Court affirm the final decision of the Commissioner. [R. 16]. Claimant timely filed objections to the Recommendation. [R. 17]. For the reasons that follow, the Court will adopt the Recommendation, overrule Claimant's objections, and affirm the final decision of the Commissioner.

## I.    BACKGROUND

Magistrate Judge Edwards's Recommendation ably sets out the full factual background of this case. [R. 16]. On December 16, 2019, Claimant first applied for disability insurance benefits and supplemental security income under Titles II and XVI of the Social Security Act in December

- 1 -

2019, alleging disability beginning on April 1, 2017. [R. 10, pp. 82, 98 (Transcript, hereinafter, "Tr.")].[1] On May 18, 2020, these applications were denied by the Social Security Administration (hereinafter, "SSA"), and Claimant did not appeal. *Id.* at 82–95, 98–111. Claimant filed new applications for disability insurance benefits and supplemental security income on July 14, 2022, again alleging disability beginning on April 1, 2017. *Id.* at 225–33. The SSA denied these applications at the initial level on September 26, 2022, *id.* at 150–59, and denied them on review on January 26, 2023, *id.* at 162–69. Claimant requested a hearing before an Administrative Law Judge (hereinafter, "ALJ"), which was held on September 19, 2023. *Id.* at 47–79. Claimant testified at the hearing, *see id.*, but because the vocational expert was unable to testify, the expert instead provided vocational information in response to written interrogatories, *id.* at 344–49, 352–55. Then, on March 13, 2024, ALJ Hall issued an unfavorable decision. *Id.* at 21–46.

In making her determination, ALJ Hall applied the traditional five-step sequential analysis promulgated by the Commissioner for evaluating a disability claim. 20 C.F.R. § 404.1520; *Kyle v. Comm'r of Soc. Sec.*, 609 F.3d 847, 855 (6th Cir. 2010). At step one, ALJ Hall determined that Claimant has not engaged in substantial gainful activity since April 1, 2017, the alleged onset date. [R. 10, p. 27 (Tr.)]. At step two, she found that Claimant has the severe impairments of degenerative disc disease of the thoracic and lumbar spine, chronic pain syndrome, morbid obesity, anxiety, major depressive disorder, and posttraumatic stress disorder. *Id.* At step three, she determined that Claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P,

---

[1] With respect to the Administrative Record, [R. 10], page number citations refer to the page number in the bottom-right-hand corner of the document. With respect to all other filings, page number citations refer to the ECF-assigned page number, not the page number included in the original filings, as there are sometimes disparities between the two.

Appendix 1. *Id.* at 29. Then, ALJ Hall determined that Claimant has the residual functional capacity ("RFC") to perform "light work" with the following limitations:

> [Claimant] can occasionally lift and carry 20 pounds; can frequently lift and carry 10 pounds; can sit for 8 hours out of 8 hours but for 2 hours at a time before needing to change positions to standing briefly, meaning 5 minutes or less, while remaining at the work station; can stand for 8 hours out of 8 hours but for 1 hour at one time before needing to change positions to sitting briefly, meaning 5 minutes or less, while remaining at the work station; can walk for 4 hours out of 8 hours but for 1 hour at a time before needing to change positions to sitting or standing briefly, meaning 5 minutes or less, while remaining at the work station; can frequently reach overhead; can frequently push or pull with the bilateral upper extremities up to the lifting and carrying limits previously mentioned; can occasionally climb ramps and stairs; can never climb ladders, ropes, or scaffolding; can occasionally stoop, balance as defined in the SCO, kneel, crouch, or crawl; can frequently tolerate vibrations, humidity, and wetness; can occasionally tolerate exposure to unprotected heights, extreme temperatures, and atmospheric conditions like dust, fumes, noxious odors, gases, and poor ventilation; can understand, remember, and carry out simple work instructions; can maintain attention, concentration, and pace for simple work tasks; can make simple work related decisions; can adapt to occasional workplace changes; and can interact occasionally with coworkers and supervisors but never with the public.

*Id.* at 31. At step four, ALJ Hall found that Claimant is unable to perform any past relevant work. *Id.* at 38. Finally, at step five, after considering Claimant's age, education, work experience, and residual functional capacity, ALJ Hall found there are jobs that exist in significant numbers in the national economy that Claimant can perform. *Id.* Taken together, ALJ Hall concluded that Claimant was not disabled, as defined in the Social Security Act, from April 1, 2017—the date of the alleged onset of Claimant's disability—through the date of the decision, March 13, 2024. *Id.* at 39.

On April 25, 2024, Claimant administratively appealed ALJ Hall's denial, *id.* at 1–6, but on March 21, 2025, the Appeals Council declined to review ALJ Hall's decision, *id.* At that point, ALJ Hall's decision became the final decision of the Commissioner, and Claimant sought judicial review from this Court on May 5, 2025. [R. 1].

## II.    LEGAL STANDARD

When a party timely objects, the Court reviews de novo only those portions of a Report and Recommendation to which an objection is made. 28 U.S.C. § 636(b)(1)(C). The Court may adopt without review any portion of the report to which no objection is made. *See Thomas v. Arn*, 474 U.S. 140, 150 (1985). On review, the Court "may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." Fed. R. Civ. P. 72(b)(3). Accordingly, the Court will review de novo the portions of Magistrate Judge Edwards's Recommendation to which Claimant properly objects.

Judicial review of the Commissioner's decision is restricted to determining whether it is supported by substantial evidence and was made pursuant to proper legal standards. *Colvin v. Barnhart*, 475 F.3d 727, 729–30 (6th Cir. 2007). "Substantial evidence" is defined as "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). Courts are not to conduct a de novo review, resolve conflicts in the evidence, or make credibility determinations. *Id.* Rather, the Court must "affirm the Commissioner's conclusions unless the Commissioner failed to apply the correct legal standard or made findings of fact that are unsupported by substantial evidence." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006).

To determine disability for a claimant over the age of eighteen, the ALJ conducts a five-step analysis:

1. Is the claimant involved in substantial gainful activity? If the answer is "yes," the claimant is not disabled. If the answer is "no," proceed to the next step.
2. Does the claimant have a medically determinable impairment or combination of impairments that satisfies the duration requirement and significantly limits his or her physical or mental ability to do basic work activities? If the answer is

- 4 -

"no," the claimant is not disabled. If the answer is "yes," proceed to the next step.

3. Does the claimant have an impairment that meets or medically equals the criteria of a listed impairment within 20 C.F.R. Part 404, Subpart P, Appendix 1? If the answer is "yes," the claimant is disabled. If the answer is "no," proceed to the next step.

4. Does the claimant have the residual functional capacity to return to his or her past relevant work? If the answer is "yes," then the claimant is not disabled. If the answer is "no," proceed to the next step.

5. Does the claimant's residual functional capacity, age, education, and work experience allow him or her to make an adjustment to other work? If the answer is "yes," the claimant is not disabled. If the answer is "no," the claimant is disabled.

20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The claimant bears the burden of proof with respect to steps one through four. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997). The burden shifts to the Commissioner at step five to prove that other work is available that the claimant is capable of performing. *Jordan v. Comm'r of Soc. Sec.*, 548 F.3d 417, 423 (6th Cir. 2008). The claimant always retains the burden of proving lack of residual functional capacity. *Jordan*, 548 F.3d at 423; *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 392 (6th Cir. 1999).

## III.    ANALYSIS

Though Claimant raised three objections to ALJ Hall's determination, *see* [R. 12, pp. 9–23], and Judge Edwards's Recommendation addressed each objection, *see* [R. 16, pp. 6–16], Claimant only raised two objections to Judge Edwards's Recommendation, *see* [R. 17, pp. 5–12]. Accordingly, the Court will adopt without review the portion of the Recommendation to which no objection was made. *See Thomas*, 474 at 150.

As outlined in greater detail below, *see infra*, Claimant makes two objections to Judge Edwards's Recommendation, challenging the ALJ's decision to not adopt certain limitations recommended by the state medical consultants.

### A.  Dr. Saranga

First, Claimant argues ALJ Hall failed to properly evaluate the medical opinion of Dr. Saranga, M.D., who performed a physical evaluation of Claimant at the request of the SSA. [R. 10, pp. 89–91, 105–07 (Tr.)]. Specifically, Claimant points to the ALJ's failure to adopt Dr. Saranga's recommendation that Claimant was able to stand and/or walk for only four hours. *Id.* at 89, 105.

Dr. Saranga assessed Claimant on March 22, 2020. *Id.* at 91, 107. In assessing Claimant's residual functional capacity, Dr. Saranga rated Claimant's "exertional limitations," determining that Claimant could "[s]tand and/or walk (with normal breaks) for a total of[] 4 hours." *Id.* at 89, 105.

In her decision, ALJ Hall provided the following analysis regarding Claimant's physical limitations, which cites to Dr. Saranga's opinions at Exhibits 2A and 4A:

> The state agency medical consultants' physical assessments are persuasive. These assessments generally find the claimant can perform less than the full range of light work with varying specific limits from the initial to the reconsideration assessments. While the undersigned has afforded slightly greater restrictions, such as the addition of a sit/stand option, the physical assessments are persuasive to the extent they support the capacity to perform less than the full range of light work. This is well supported by the findings cited in the assessments including imaging, treating exams, and the claimant's BMI. It is consistent with the other evidence of record including a subsequent consultative physical exam of the claimant and the generally routine and conservative treatment he has received. (Ex. 2A, 4A, 6A, 8A, 10A, 12A)

*Id.* at 37.[2] In his briefing, Claimant points out that although Dr. Saranga found Claimant could only "stand and/or walk (with normal breaks) for a total of[] 4 hours," *id.* at 89, 105, and although ALJ Hall found Dr. Saranga's assessment "persuasive," *id.* at 37, ALJ Hall's residual functional capacity determination nevertheless stated that Claimant "can stand for 8 hours out of 8 hours but

---

[2] Exhibits 2A and 4A refer to Dr. Saranga's evaluation and are found at [R. 10, pp. 89–91, 105–07 (Tr.)]. Exhibits 6A and 8A refer to Dr. Demos's evaluation and are found at [R. 10, pp. 114, 123–25 (Tr.)]. Exhibits 10A and 12A refer to Dr. Sutherland's evaluation and are found at [R. 10, pp. 131, 141–43 (Tr.)].

for 1 hour at one time before needing to change positions to sitting briefly, meaning 5 minutes or less, while remaining at the work station," *id.* at 31, a conclusion Claimant contends is inconsistent with Dr. Saranga's assessment, *see* [R. 15, p. 3]. Accordingly, Claimant argues that ALJ Hall erred because she "failed to adopt or explain why she rejected the standing limitations assessed by Dr. Saranga" despite finding Dr. Saranga's opinion persuasive. *See* [R. 12, p. 11]. Relatedly, Claimant argues because ALJ Hall failed to explain why she did not adopt Dr. Saranga's recommended four-hour standing limitation, it is impossible for this Court to trace her reasoning on review. *See* [R. 17, pp. 7–8, 11].

In formulating her residual functional capacity determination, ALJ Hall reasonably relied on the opinions of three state agency medical consultants: Dr. Saranga, who evaluated Claimant in March of 2020 during his prior application for social security benefits, [R. 10, pp. 37, 89–91, 105–07 (Tr.)]; Dr. Demos, who evaluated Claimant in September of 2022, *id.* at 114, 123–25; and Dr. Sutherland, who evaluated Claimant in January of 2023, *id.* at 131, 141–43; *see also id.* at 37. While Dr. Saranga recommended a four-hour standing limitation, Dr. Demos and Dr. Sutherland recommended six-hour standing limitations. *See id.* at 89, 105, 124, 141. ALJ Hall found each of these opinions persuasive, noting that they "generally find the claimant can perform less than the full range of light work with varying specific limits from the initial to the reconsideration assessments." *Id.* at 37. Claimant does not challenge the ALJ's finding that each expert's opinion was persuasive. *See* [R. 12, p. 13 ("[T]he ALJ correctly found that Dr. Saranga's medical opinion—including the assessed standing limitations—was supported by and consistent with the objective medical record.")].

Rather, Claimant argues ALJ Hall failed to resolve the conflict between her RFC determination—namely, that Claimant "can stand for 8 hours out of 8 hours but for 1 hour at one

time before needing to change positions to sitting briefly, meaning 5 minutes or less, while remaining at the work station," [R. 10, p. 31 (Tr.)]—and Dr. Saranga's 4-hour standing limitation, *see id.* at 89, 105. But Claimant misreads ALJ Hall's evaluation of the persuasiveness of Dr. Saranga's opinion and the opinions of the other state agency medical consultants. ALJ Hall did not state that she found each limitation opined by each state agency medical consultant persuasive, and did not state that she adopted each limitation. *See id.* at 37. Rather, ALJ Hall explained that the state agency medical consultants "generally" found Claimant could "perform less than the full range of light work with varying specific limits," and that "to the extent" such findings "support the capacity to perform less than the full range of light work" consistent with her residual functional capacity determination, the findings are persuasive. *Id.* As this explanation makes clear, ALJ Hall recognized there were differences in the three opinions from the state agency medical consultants by noting they provided "varying" opinions about Claimant's limitations. *Id.* Accordingly, it is clear to this Court that ALJ Hall did not adopt each specific finding of each consultant—indeed, such a result would be impossible due to their "varying" opinions—but rather, ALJ Hall incorporated only those limitations she found were supported by and consistent with the medical record.[3] *See id.*

In support of her determination that these medical opinions were persuasive only to this limited extent, ALJ Hall expressly cited to "the findings cited in the assessments including

---

[3] Claimant also objected that "to the extent that the Magistrate judge found that the ALJ's decision was 'not entirely clear,' remand is required." [R. 17, p. 7 (citation omitted)]. To the extent this Court's conclusion differs from Judge Edwards's finding that "[i]t is not entirely clear that ALJ Hall intended to adopt Dr. Saranga's opined limitations or find the four-hour standing limitation persuasive," [R. 16, pp. 8–9], and to the extent Claimant objected to Judge Edwards's phrasing to that effect, *see* [R. 17, pp. 7–8], the Court declines to adopt Judge Edwards's recommendation. Instead, the Court finds ALJ Hall *was* clear in her expressed intent to *not* adopt Dr. Saranga's recommended limitations verbatim. *See* [R. 10, p. 37 (Tr.) (finding the assessments of the state agency medical consultants, including Dr. Saranga, "persuasive *to the extent* they support the capacity to perform less than the full range of light work" (emphasis added))].

- 8 -

imaging, treating exams, and the claimant's BMI," and to "a subsequent consultative physical exam of the claimant and the generally routine and conservative treatment [Claimant] has received." *Id.* For example, elsewhere in the medical records cited by ALJ Hall, state medical examiners found that Claimant's statements about the intensity, persistence, and functionally limiting effects of his symptoms were not substantiated by the objective medical evidence alone, *id.* at 116, 123, 133, 141, and that Claimant could "[s]tand and/or walk (with normal breaks) for a total of[] [a]bout 6 hours in an 8 hour workday, *id.* at 122 (Cutler exam., Ex. 8A), 141 (Sutherland exam., Ex. 12A). These assessments took place on September 26, 2022, *see id.* at 113–18, 120–27, and on January 10, 2023, *see id.* at 129–35, 137–45, making each of them more recent than Dr. Saranga's March 22, 2020 evaluation, *see id.* at 89–91, 105–07, and suggesting that Claimant's standing abilities have improved over time.

Furthermore, elsewhere in her opinion, ALJ Hall extensively details (1) Claimant's conservative treatment plan, which involved "referral to pain management and outpatient physical therapy for lumbar core strengthening stabilization" and subsequent "medication management (NSAID and a muscle relaxer), physical therapy, and chiropractic care" alongside provision of a lumbar brace and scheduling Claimant for injections, *id.* at 33 (citing *id.* at 447–50 (Ex. 3F), 531–35, 574–78 (Ex. 5F), 708–760 (Ex. 7F); 809–20, 827–59 (Ex. 9F), 1484–1508 (Ex. 10F), 1515–22, 1576, 1586–1604, 1675–77 (Ex. 11F), 1940–2018 (Ex. 12F), 2320–2629 (Ex. 17F), 3226–64 (Ex. 19F)); (2) Claimant's imaging results, which "when considered in conjunction with the claimant's body mass index, support[] a finding of severe degenerative disc disease" but suggest "no clear etiology for the claimant's reported radiating symptoms," *id.* (citing *id.* at 362–79 (Ex. 1F), 535, 537–38, 565, 580, 607 (Ex. 5F), 749, 753, 755 (Ex. 7F), 839, 1027–35, 1040–46 (Ex. 9F), 1861–62, 1869 (Ex. 11F), 1948–54, 1994–2004 (Ex. 12F)); and (3) Claimant's October 2023

consultative physical exam performed by Nurse Slone, an Advanced Practice Registered Nurse certified as a Family Nurse Practitioner, which revealed "good range of motion in the lumbar spine," "no complaints of back pain or radiculopathy with straight leg raise," ambulation without the use of an assistive device, and the ability to squat and walk without pain, *id.* at 34 (citing *id.* at 2297–2308 (Slone Exam, Ex. 15F)).

In particular, the Court emphasizes ALJ Hall's extensive consideration of Nurse Slone's October 2023 examination and the ALJ's specific reference to the "subsequent consultative physical exam" when assessing the other "state agency medical consultants' physical assessments." *Id.* at 37. In her examination findings, Nurse Slone determined that Claimant could stand for 8 out of 8 hours over the course of the workday. *Id.* at 2303. ALJ Hall described Nurse Slone's examination results, including her standing recommendation, as "largely unremarkable" and "consistent with the other evidence of record including the imaging and exams described herein and the documented BMI." *Id.* at 36. Elsewhere, ALJ Hall further outlined Nurse Slone's findings, including Claimant's normal muscle strength and tone, good range of motion, and ability to walk without pain, among other results. *See id.* at 34. In her residual functional capacity determination, ALJ Hall found these examination results "consistent with" the examinations by other state agency medical consultants, including Dr. Saranga, as to Claimant's capacity to perform light work. *Id.* at 36. The fact that ALJ Hall appeared to adopt Nurse Slone's standing recommendation and reject Dr. Saranga's standing recommendation is not inconsistent with ALJ Hall having found both Nurse Slone and Dr. Saranga's examinations persuasive to the extent they each support Claimant's capacity to perform less than the full range of light work. *See id.* at 36, 37.

- 10 -

In his objections to Judge Edwards's Recommendation, Claimant correctly notes that the Sixth Circuit requires the ALJ's decision to "'say enough to allow the appellate court to trace the path of his reasoning.'" [R. 17, pp. 7–8 (quoting *Stacey v. Comm'r of Soc. Sec.*, 451 F. App'x 517, 519 (6th Cir. 2011) (citation and quotations omitted))]. But the Sixth Circuit has also found that "[s]o long as the ALJ's decision adequately explains and justifies its determination as a whole, it satisfies the necessary requirements . . . ." *Norris v. Comm'r of Soc. Sec.*, 461 F. App'x 433, 440 (6th Cir. 2012); *see also Robinson v. Comm'r of Soc. Sec.*, No. 22-1397, 2022 WL 17168444, at *2 (6th Cir. Nov. 22, 2022) ("Even for a medical opinion, there is no requirement to cite to every piece of evidence or conclusion . . . ."). In other words, the ALJ must merely "provide an accurate and logical bridge between the evidence and the conclusion." *Logsdon v. Kijakazi*, No. 1:20-CV-00177-GNS, 2022 WL 812416, at *5 (W.D. Ky. Mar. 16, 2022) (quotation omitted).

Here, as the Court has outlined, ALJ Hall provided a comprehensive and sufficient explanation for her residual functional capacity determination, including her reasoning as to why she did not adopt Dr. Saranga's 4-hour standing limitation. As her opinion conveys, ALJ Hall expressly referenced Nurse Slone's more recent 2023 examination results, implicitly finding them more compelling, and the Court can trace this path of her reasoning. *See* [R. 10, pp. 34, 36, 37 (Tr.)]. More specifically, and to reiterate the Court's previous analysis, ALJ Hall considered Dr. Saranga's opinion arising from Claimant's examination in March of 2020 alongside numerous other medical sources, including Claimant's imaging, treating exams, body mass index, and generally conservative treatment, as well as the opinions of Dr. Demos, who evaluated Claimant in September of 2022, *id.* at 114, 123–25, Dr. Sutherland, who evaluated Claimant in January of 2023, *id.* at 131, 141–43, and Nurse Slone, who evaluated Claimant in October of 2023, *id.* at 2298. *See id.* at 37. In doing so, ALJ Hall built a clear and logical bridge that allows the Court to

- 11 -

trace the path of her reasoning regarding her consideration of Dr. Saranga's opinion in that determination and the ALJ's ultimate adoption of Nurse Slone's more recent standing assessment.

As for Claimant's objection regarding post-hoc rationalizations, *see* [R. 17, p. 8], the Court's tracing of ALJ Hall's reasoning is not the sort of "post-hoc rationalization" that has long been rejected by the Sixth Circuit. *See Hicks v. Comm'r of Soc. Sec.*, 909 F.3d 786, 808 (6th Cir. 2018) ("[A]n agency's actions must be upheld, if at all, on the basis articulated by the agency itself, and not based on appellate counsel's post-hoc rationalizations." (citation modified)). As the Court has explained, ALJ Hall referred to Claimant's imaging, treating exams, body mass index, and generally conservative treatment as well as the medical examinations of Dr. Demos, Dr. Sutherland, and Nurse Slone alongside her consideration of Dr. Saranga's evaluation. *See* [R. 10, p. 37 (Tr.)]. To the extent Judge Edwards's Recommendation drew connections between this medical evidence and ALJ Hall's residual functional capacity determination, and to the extent this Court reiterates those connections now, these rationales do not depart from "the basis articulated by the [SSA] itself." *See Hicks*, 909 F.3d at 808.

Taken together, ALJ Hall's decision "provide[s] an accurate and logical bridge between the evidence and the conclusion," *Logsdon*, 2022 WL 812416, at *5, as ALJ Hall explained that she considered Dr. Saranga's opinion persuasive only "to the extent [it] support[s] the capacity to perform less than the full range of light work" and outlined that other evidence supported her physical residual functional capacity determination, including "imaging, treating exams, and the claimant's BMI," as well as "the other evidence of record including a subsequent consultative physical exam [by Nurse Slone] of the claimant and the generally routine and conservative treatment he has received." [R. 10, p. 37 (Tr.)].

And, ALJ Hall's physical residual functional capacity determination is supported by "substantial evidence"—by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip*, 25 F.3d at 286. This is shown by ALJ Hall's extensive consideration of a range of evidence available to her—including Claimant's conservative treatment plan, [R. 10, p. 33 (citing *id.* at 447–50 (Ex. 3F), 531–35, 574–78 (Ex. 5F), 708–760 (Ex. 7F); 809–20, 827–59 (Ex. 9F), 1484–1508 (Ex. 10F), 1515–22, 1576, 1586–1604, 1675–77 (Ex. 11F), 1940–2018 (Ex. 12F), 2320–2629 (Ex. 17F), 3226–64 (Ex. 19F))], Claimant's imaging records and body mass index, *id.* (citing *id.* at 362–79 (Ex. 1F), 535, 537–38, 565, 580, 607 (Ex. 5F), 749, 753, 755 (Ex. 7F), 839, 1027–35, 1040–46 (Ex. 9F), 1861–62, 1869 (Ex. 11F), 1948–54, 1994–2004 (Ex. 12F)); and Claimant's October 2023 consultative physical exam performed by Nurse Slone, *id.* at 34 (citing *id.* at 2297–2308 (Slone Exam, Ex. 15F))—in reaching an outcome different than Dr. Saranga's regarding Claimant's degree of limitation in his ability to stand throughout the workday, *see id.* at 37. The Court therefore rejects Claimant's challenges on these grounds.

### B.  Dr. Perry

Claimant's second objection contends that ALJ Hall erred in failing to adopt the recommendation of Dr. Gary Perry, Ed.D., who performed a psychological evaluation of Claimant at the request of the SSA. [R. 10, pp. 91–93, 107–09 (Tr.)]. Specifically, Claimant points to the ALJ's failure to adopt Dr. Perry's recommendation that Claimant was able to work in an "environment that offers non-confrontational contact" as part of the mental residual functional capacity determination. *Id.* at 93, 109. According to Claimant, ALJ Hall erred because she considered the findings of Dr. Perry "persuasive," *id.* at 37, yet ALJ Hall nevertheless failed to include Dr. Perry's "non-confrontational" limitation in her mental residual functional capacity determination, *see id.* at 31, and provided "no rationale" for not including the limitation in the

- 13 -

residual functional capacity. [R. 17, pp. 9–11]. Claimant asserts that a limitation to "non-confrontational" contact is substantively different from a limitation to "occasional" contact, noting in support that "district courts throughout this Circuit have found a significant distinction between a limitation to occasional interactions and a limitation to non-confrontational/non-tandem/superficial interactions." [R. 15, p. 11]; [R. 17, pp. 9–10]. Claimant thus alleges error in ALJ Hall's failure to limit Claimant to non-confrontational contact, as recommended by Dr. Perry.

Dr. Perry assessed Claimant on May 15, 2020. [R 10, pp. 93, 109 (Tr.)]. In assessing Claimant's mental residual functional capacity, Dr. Perry determined that Claimant could "[i]nteract with the public, co-workers, and supervisors occasionally (up to 1/3 time) for task completion in a work environment that offers non-confrontational contact sufficient for task completion . . . ." *Id.* at 93, 109.

In her decision, ALJ Hall provided the following analysis regarding Claimant's psychological limitations, which cites to Dr. Perry's opinions at Exhibits 2A and 4A:

> The state agency psychological consultants' mental assessments are persuasive. While the assessments offer varying limits in the paragraph B criteria, the narrative offered indicates the claimant can understand, remember, and carry out simple and detailed instructions; sustain attention for two hour segments for detailed tasks; related appropriately with coworkers and supervisors with occasional contact with the public; and adapt to routine changes within those parameters. This is well supported by the findings cited in the assessment including exams with the mental health provider and medical providers. It is consistent with the other evidence of record including the conservative treatment received and the subsequent consultative psychological exam findings. These assessments are persuasive. The undersigned notes that the assessments finding only mild limits do not offer any further opinion on her capacity to perform basic mental related work activities and are not evaluated for persuasiveness. (Ex. 2A, 4A, 6A, 8A, 10A, 12A)

*Id.* at 37.[4] In his briefing, Claimant points out that although Dr. Perry found Claimant could "[i]nteract with the public, co-workers, and supervisors occasionally (up to 1/3 time) for task completion in a work environment that offers non-confrontational contact sufficient for task completion," *id.* at 93, 109, and although ALJ Hall found Dr. Perry's assessment "persuasive," *id.* at 37, ALJ Hall's mental residual functional capacity determination nevertheless stated that Claimant "can interact occasionally with coworkers and supervisors but never with the public," *id.* at 31, a conclusion Claimant contends is inconsistent with Dr. Perry's assessment because it does not incorporate a limitation to non-confrontational contact, *see* [R. 15, pp. 10–11]. Accordingly, Claimant argues that ALJ Hall erred because she "failed to adopt or explain why she rejected Dr. Perry's opinion that Plaintiff was limited to non-confrontational contact" despite finding Dr. Perry's opinion persuasive. *See* [R. 12, p. 21]. Relatedly, Claimant argues because ALJ Hall failed to explain why she did not adopt Dr. Perry's non-confrontational limitation, it is impossible for this Court to trace her reasoning on review.

### 1. Sufficiency of ALJ Hall's Explanation

The Court will first consider whether ALJ Hall adequately explained her reasoning related to her failure to adopt Dr. Perry's recommended limitation. In this assessment, the Court applies the same standards as outlined in the preceding analysis. *See supra* Section III.A.

In formulating the mental residual functional capacity determination, ALJ Hall reasonably relied on and referenced the medical findings of two other state agency psychological consultants, in addition to Dr. Perry: Dr. Cutler, who examined Claimant in September of 2022 and found Claimant could "relate appropriately with coworkers and supervisors with occasional (up to 1/3 of

---

[4] Exhibits 2A and 4A refer to Dr. Perry's evaluation and are found at [R. 10, pp. 91–93, 107–09 (Tr.)]. Exhibits 6A and 8A refer to Dr. Cutler's evaluation and are found at [R. 10, pp. 116–17, 122–23 (Tr.)]. Exhibits 10A and 12A refer to Dr. Thompson's evaluation and are found at [R. 10, pp. 131–32, 139–40 (Tr.)].

the time) contact with the public," *id.* at 117 (Ex. 6A), 122–23 (Ex. 8A)]; and Dr. Thompson, who examined Claimant in January of 2023 and found Claimant could "relate appropriately with coworkers and supervisors with occasional (up to 1/3 of the time) contact with the public," *id.* at 131–32 (Ex. 10A), 143–44 (Ex. 12A). In each of these examinations—both more recent than Dr. Perry's 2020 examination—Dr. Cutler and Dr. Thompson made no recommendation that Claimant could only engage in "non-confrontational" contact. *See id.* at 117 (Ex. 6A), 122–23 (Ex. 8A), 131–32 (Ex. 10A), 143–44 (Ex. 12A). ALJ Hall found each of these opinions persuasive, but noted that while they "offer varying limits," ultimately the "narrative offered indicates the claimant can . . . relate[] appropriately with coworkers and supervisors with occasional contact with the public." *Id.* at 37.[5] Claimant does not challenge ALJ Hall's finding that each expert's opinion was persuasive. *See generally* [R. 12, pp. 20–23]; [R. 15, pp. 10–12]; [R. 17, pp. 9–12].

Rather, Claimant argues ALJ Hall failed to resolve the conflict between her RFC determination—namely, that Claimant "can interact occasionally with coworkers and supervisors but never with the public," [R. 10, p. 31 (Tr.)]—and Dr. Perry's "non-confrontational" contact limitation, *see id.* at 93, 109. But Claimant misreads ALJ Hall's evaluation of the persuasiveness of Dr. Perry's opinion and the opinions of the other state agency medical consultants. ALJ Hall did not state that she found each and every limitation opined by each state agency medical consultant persuasive, and she did not state that she adopted each limitation. *See id.* at 37. Rather, ALJ Hall explained that the state agency medical consultants "offer varying limits" but reflect a "narrative . . . indicat[ing] the claimant can . . . relate[] appropriately with coworkers and

---

[5] The Court notes that ALJ Hall's ultimate mental residual functional capacity determination was thus *more* restrictive than that recommended by Dr. Cutler and Dr. Thompson, as ALJ Hall's final residual functional capacity found Claimant could "interact occasionally with coworkers and supervisors *but never with the public*." *Id.* at 31 (emphasis added).

- 16 -

supervisors with occasional contact with the public." *Id.* As this explanation makes clear, ALJ Hall

recognized there were differences in the three opinions from the state agency medical consultants

by noting they suggested "varying limits" about Claimant's abilities. *Id.* Accordingly, it is clear to

this Court that ALJ Hall did not adopt each specific finding of each consultant—indeed, such a

result would be impossible due to their "varying" opinions—but rather, ALJ Hall incorporated

only those limitations she found were supported by and consistent with the medical record and

sufficiently traced her reasoning in doing so.[6] *See id.*

In support of her determination that these psychological opinions were persuasive to the

extent of the narrative she outlined, ALJ Hall cited to "findings cited in the assessment including

exams with the mental health provider and medical providers," and to "other evidence of record

including the conservative treatment received and the subsequent consultative psychological exam

findings." *Id.* More specifically, ALJ Hall extensively detailed (1) Claimant's generally

conservative treatment plan, which involved medication and therapy, *id.* at 35 (citing *id.* at 620,

701, 703, 707 (Ex. 6F), 2019–2064 (Ex. 13F), 2263–78, 2285 (Ex. 14F)); and (2) Claimant's

November 2023 consultative psychological exam performed by Mr. Brendan Ryan, M.S., L.P.P.,

which revealed Claimant had "avoidant eye contact but was cooperative" and reported an anxious

mood, but demonstrated logical and coherent thought, intact abstract reasoning, and average

intellectual functioning, *id.* at 35 (citing *id.* at 2309–19 (Ex. 16F)). Considered together, ALJ Hall

---

[6] Claimant also objected that "to the extent that the Magistrate Judge found that the ALJ's decision was 'not clear,' remand is required." [R. 17, p. 11 (citation omitted)]. To the extent this Court's conclusion differs from Judge Edwards's finding that "[i]t is not clear that ALJ Hall expressed an intent to adopt any of Dr. Perry's limitations verbatim," [R. 16, p. 14], and to the extent Claimant objected to Judge Edwards's phrasing to that effect, *see* [R. 17, p. 11], the Court declines to adopt Judge Edwards's Recommendation. Instead, the Court finds ALJ Hall *was* clear in her expressed intent to *not* adopt Dr. Perry's recommended limitations verbatim. *See* [R. 10, p. 37 (Tr.) (finding the assessments of the state agency medical consultants, including Dr. Perry, "persuasive" despite offering "varying limits)]. To the extent Judge Edwards's Recommendation implies ALJ Hall failed to appropriately trace a logical bridge between her reasoning and her conclusion as required by the Sixth Circuit, *see Logsdon*, 2022 WL 812416, at *5, the Court disagrees as outlined above.

found these sources of evidence "support . . . the mental residual functional capacity herein," *id.*, namely, that Claimant "can interact occasionally with coworkers and supervisors but never with the public," *id.* at 31.

In his objections to Judge Edwards's Recommendation, Claimant disputes whether ALJ Hall explained her reasoning to the extent required by the Sixth Circuit. [R. 17, p. 11 (citation omitted)]. As in Claimant's objection regarding Dr. Saranga, *see supra* Section III.A, Claimant correctly notes that the Sixth Circuit requires the ALJ's decision to "'say enough to allow the appellate court to trace the path of his reasoning.'" [R. 17, p. 11 (quoting *Stacey*, 451 F. App'x at 519 (citation and quotations omitted))]. In the preceding section, *see supra* Section III.A, the Court explained "[s]o long as the ALJ's decision adequately explains and justifies its determination as a whole, it satisfies the necessary requirements . . . ." *Norris.*, 461 F. App'x at 440; *see also Robinson*, 2022 WL 17168444, at *2 ("Even for a medical opinion, there is no requirement to cite to every piece of evidence or conclusion . . . ."). In other words, the ALJ must merely "provide an accurate and logical bridge between the evidence and the conclusion." *Logsdon*, 2022 WL 812416, at *5 (quotation omitted).

Here, as the Court has outlined, ALJ Hall provided a comprehensive and sufficient explanation for her mental residual functional capacity determination, including her reasoning as to why she did not adopt Dr. Perry's "non-confrontational" contact limitation. As her opinion conveys, ALJ Hall considered Dr. Perry's opinion arising from Claimant's examination in May of 2020 alongside numerous other medical sources, including "exams with the mental health provider and medical provider" and Claimant's conservative treatment, as well as the opinions of Dr. Cutler, who evaluated Claimant in September of 2022, [R. 10, pp. 117 (Ex. 6A), 122–23 (Ex. 8A)], and Dr. Thompson, who evaluated Claimant in January of 2023, *id.* at 131–32 (Ex. 10A), 143–44 (Ex.

12A). Each of these more recent examinations found that Claimant could "relate appropriately with coworkers and supervisors with occasional (up to 1/3 of the time) contact with the public." *Id.* at 117 (Ex. 6A), 122–23 (Ex. 8A), 131–32 (Ex. 10A), 143–44 (Ex. 12A). The fact that ALJ Hall appeared to find these contact limitations more persuasive—indeed, ALJ Hall went so far as to find Claimant was limited to "never" interacting with the public, *id.* at 31—is not inconsistent with ALJ Hall having found the recommendations of Dr. Perry, Dr. Cutler, *and* Dr. Thompson persuasive to the extent they offered the "narrative" that Claimant could "relate[] appropriately with coworkers and supervisors with occasional contact with the public," *id.* at 37. In considering these opinions together, ALJ Hall built a clear and logical bridge that allows the Court to trace the path of her reasoning regarding her consideration of Dr. Perry's opinion in that determination as well as the more recent opinions of Dr. Cutler and Dr. Thompson. Notably, though, ALJ Hall did not adopt Dr. Cutler's and Dr. Thompson's recommendations in full; instead of finding that Claimant could engage in "occasional" interactions with the public, *id.* at 117 (Ex. 6A), 122–23 (Ex. 8A), 131–32 (Ex. 10A), 143–44 (Ex. 12A), she determined that Claimant could "never" interact with the public, *id.* at 31. This fact further bolsters the Court's conclusion: ALJ Hall considered the medical opinions collectively, found them generally persuasive as a whole, and made her ultimate residual functional capacity determination with each recommendation in mind but without specifically adhering to any single expert's opinion.

As for Claimant's objection regarding post-hoc rationalizations, *see* [R. 17, p. 12], the Court's tracing of ALJ Hall's reasoning is not the sort of "post-hoc rationalization" that has long been rejected by the Sixth Circuit. *See Hicks v. Comm'r of Soc. Sec.*, 909 F.3d 786, 808 (6th Cir. 2018) ("[A]n agency's actions must be upheld, if at all, on the basis articulated by the agency itself, and not based on appellate counsel's post-hoc rationalizations." (citation modified)). As the Court

- 19 -

has explained, ALJ Hall referred, among other things, to Claimant's generally conservative treatment plan, which involved medication and therapy, Claimant's November 2023 consultative psychological exam performed by Mr. Brendan Ryan, M.S., L.P.P. *See* [R. 10, p. 37 (Tr.)]. To the extent Judge Edwards's Recommendation drew connections between this medical evidence and ALJ Hall's mental residual functional capacity determination, and to the extent this Court reiterates those connections now, these rationales do not depart from "the basis articulated by the [SSA] itself." *See Hicks*, 909 F.3d at 808.[7]

Taken together, ALJ Hall's decision "provide[s] an accurate and logical bridge between the evidence and the conclusion," *Logsdon*, 2022 WL 812416, at *5, as ALJ Hall explained that she considered Dr. Perry's opinion alongside those of the other state agency medical consultants, and found they "offer[ed] varying limits" but collectively formed a "narrative" as to Claimant's abilities: namely, that Claimant can, among other things, "relate[] appropriately with coworkers and supervisors with occasional contact with the public." [R. 10, p. 37 (Tr.)]. ALJ Hall then adopted an even more restrictive limitation, determining that Claimant could "interact occasionally with coworkers and supervisors *but never with the public*." *Id.* at 31 (emphasis added).

And, ALJ Hall's mental residual functional capacity determination is supported by "substantial evidence"—by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip*, 25 F.3d at 286. This is shown by ALJ Hall's extensive consideration of a range of evidence available to her—including Claimant's conservative treatment

---

[7] For example, in his objections to Judge Edwards's Recommendation, Claimant contends that Judge Edwards "failed to show how [Claimant's] ability to live with a partner and his ability to play games online with others equates to his ability to handle confrontational interactions during a full-time job." [R. 17, p. 12]. Yet, to the extent Judge Edwards included such information in her analysis, *see* [R. 16, pp. 15–16], she merely recited the ALJ's own summary of Claimant's representations, *see* [R. 10, pp. 30 (citing *id.* at 268–275 (Ex. 4E), 307–314 (Ex. 10E); 380–1483 (Exs. 2F–9F), 1509–2296 (Exs. 11F–14F)), 36 (citing *id.* at 621 (Ex. 6F), 1611 (Ex. 11F))], and therefore did not engage in post-hoc rationalization, but rather pointed to evidence in the record that the ALJ outlined and relied on.

plan, [R. 10, p. 35 (Tr.) (citing *id.* at 620, 701, 703, 707 (Ex. 6F), 2019–2064 (Ex. 13F), 2263–78, 2285 (Ex. 14F))], Claimant's own testimony at the evidentiary hearing held in this matter, *id.* at 36 (citing *id.* at 621 (Ex. 6F), 1611 (Ex. 11F)), and Claimant's November 2023 consultative psychological exam performed by Mr. Brendan Ryan, M.S., L.P.P., *id.* at 35 (citing *id.* at 2309–19 (Ex. 16F))—in establishing Claimant's mental residual functional capacity, *see id.* at 37. The Court therefore rejects Claimant's challenges on these grounds.

2.   Non-Confrontational Contact Versus Occasional Contact

The Court previously found that ALJ Hall sufficiently explained her reasoning. *See supra* Section III.B.1. As already outlined, ALJ Hall considered the assessments of the state agency psychological consultants—Dr. Perry, Dr. Cutler, and Dr. Thompson—together, and found them "persuasive." [R. 10, p. 37 (Tr.) (citing *id.* at 82–95 (Perry Exam., Ex. 2A), 98–111 (Perry Exam., Ex. 4A), 113–118 (Cutler Exam., Ex. 6A), 120–127 (Cutler Exam., Ex. 8A), 129–135 (Thompson Exam., Ex. 10A), 137–145 (Thompson Exam., Ex. 12A)]. In addressing the assessments, ALJ Hall noted they "offer varying limits" but collectively form a "narrative" as to Claimant's abilities: namely, that Claimant can, among other things, "relate[] appropriately with coworkers and supervisors with occasional contact with the public." *Id.* In his objection to Judge Edwards's Recommendation, Claimant contends that "Dr. Perry's opinion that Plaintiff was limited to non-confrontational contact was not incorporated into the ALJ's finding that Plaintiff was limited to occasional interactions." [R. 17, p. 9]. However, as the Court will explain, *see infra*, even if ALJ Hall did not adequately articulate the reasoning for not including Dr. Perry's "non-confrontational" contact recommendation, any such error is harmless because under the case law as applicable to this matter, non-confrontational contact is substantively equivalent to occasional contact, and an ALJ is not required to adopt the opinions of medical experts verbatim.

Claimant is correct that multiple district courts within this circuit have differentiated between recommendations from medical experts that speak to the qualitative versus quantitative nature of interactions. *See, e.g.*, *Hutton v. Comm'r of Soc. Sec.*, No. 2:20-CV-339, 2020 WL 3866855, at *4 (S.D. Ohio July 9, 2020), *report and recommendation adopted sub nom. Hutton v. Comm'r of Soc. Sec. Admin.*, No. 2:20-CV-339, 2020 WL 4334920 (S.D. Ohio July 28, 2020) ("[T]he terms 'occasional' and 'superficial' are not interchangeable."); *Runyon v. Comm'r of Soc. Sec.*, No. 2:20-CV-3820, 2021 WL 3087639, at *4 (S.D. Ohio July 22, 2021), *report and recommendation adopted*, No. 2:20-CV-3820, 2021 WL 3489615 (S.D. Ohio Aug. 9, 2021) ("This Court has repeatedly recognized that 'limiting the *quantity* of time spent with an individual does not accommodate a limitation relating to the *quality* of the interactions—including a limitation to "superficial" interaction.'" (quoting *Hummel v. Comm'r Soc. Sec.*, No. 2:18-cv-28, at 7 (S.D. Ohio Mar. 13, 2020) (emphasis in original))); *Kelsey v. Comm'r of Soc. Sec.*, No. 1:22-CV-280, 2022 WL 18358921, at *6 (W.D. Mich. Dec. 29, 2022), *report and recommendation adopted*, No. 1:22-CV-280, 2023 WL 246884 (W.D. Mich. Jan. 18, 2023) (differentiating between limitations on the quantity of time a claimant can interact with others and limitations on the quality of the interactions). However, as Judge Edwards's Recommendation notes, other district courts within this circuit make no such distinction. *See* [R. 16, pp. 14–15 (collecting cases)]. In those opinions, courts point out that rare interactions (i.e., quantitatively few) are also likely to be short (i.e., qualitatively limited), suggesting that there is no true conflict—and thus no inconsistency—where an ALJ's residual functional capacity determination uses one term despite a medical expert's recommendation using another. *See, e.g.*, *Stephen D. v. Comm'r of Soc. Sec.*, 734 F. Supp. 3d 729, 738 (S.D. Ohio 2024) ("[W]hen a person is limited to engaging in only short and infrequent interactions, that strongly correlates, as a practical matter, with interactions that are superficial, as

- 22 -

well."); *Martin v. Comm'r of Soc. Sec.*, No. 2:24-CV-208, 2025 WL 3153381, at *2 (W.D. Mich. Nov. 12, 2025) ("['Occasional' and [superficial'] do not inherently have specific meanings suggesting a conflict between them."). In other words, some district courts within this circuit have found a limitation to "superficial" interactions is not substantively different from a limitation to "occasional" interactions. Although the Sixth Circuit has not directly addressed the issue, in finding that an ALJ appropriately "accounted for" a recommended limitation of "superficial" interactions by adopting an "occasional interaction" limitation, the Sixth Circuit has reasoned that "there is no requirement that an ALJ adopt a state agency psychologist's opinions verbatim; nor is the ALJ required to adopt the state agency psychologist's limitations wholesale." *Reeves v. Comm'r of Soc. Sec.*, 618 F. App'x 267, 275 (6th Cir. 2015).

Because the aforementioned sources within this circuit have primarily distinguished between "occasional" and "superficial" limitations, the Court also looks to courts in other circuits that have addressed the precise issue before this Court: whether a recommended limitation to "occasional" contact is substantively different than a recommended limitation to "non-confrontational" contact.[8] *See* [R. 17, pp. 9–10]. Where other courts have addressed this issue, they have found the two terms are not substantively different. *See, e.g.*, *Edwards v. Comm'r of Soc. Sec.*, No. 3:19-CV-00480-RJC, 2020 WL 4547162, at *3 (W.D.N.C. Aug. 6, 2020) ("Although the ALJ did not include a specific limitation to only non-confrontational direction from a supervisor, his [residual functional capacity] assessment is not inconsistent with such a limitation . . . ."); *Faye O. v. Comm'r of Soc. Sec.*, No. C22-5032-MLP, 2022 WL 2392059, at *6 (W.D. Wash. July 1,

---

[8] Notably, Claimant does not cite to any cases involving the precise language at issue here—"non-confrontational" contact versus "occasional" contact. *See* [R. 12, pp. 22–23]; [R. 15, p. 11]; [R. 17, p. 10]. Rather, Claimant only cites to cases discussing "non-tandem" contact or "superficial" contact as compared to "occasional" contact. *See* [R. 12, pp. 22–23]; [R. 15, p. 11]; [R. 17, p. 10].

2022) ("Though not an identical finding, the ALJ translated the State agency reviewing psychological consultants' opinions that Plaintiff required a non-confrontational setting into Plaintiff's [residual functional capacity] by limiting her to simple, repetitive, and routine tasks with no more than brief superficial contact with the general public."); *Hutson v. Berryhill*, No. 2:18-CV-01383, 2019 WL 2030541, at \*15 (S.D.W. Va. Apr. 2, 2019), *report and recommendation adopted*, No. 2:18-CV-1383, 2019 WL 2030138 (S.D.W. Va. May 8, 2019) ("The [residual functional capacity] also provided that Claimant be limited to 'occasional interaction with supervisors and coworkers, and to no interaction with the public.' This is consistent with the psychological consultants' findings that Claimant . . . could 'maintain brief, superficial contacts with supervisors and coworkers in a non-confrontational setting' . . . .").

Both courts from the Sixth Circuit and those across the country thus appear to treat terms like "occasional," "superficial," and "non-confrontational" as interchangeable and substantively similar. This appears to be especially true where a claimant performs unskilled work, as shown by a previous social security ruling and as found by a district court within this circuit. *See* Social Security Ruling 96-9p, 1996 WL 374185, at \*8–9 (noting that "[b]asic communication is all that is needed to do unskilled work" and that unskilled workers must merely "[r]espond[] appropriately to supervision, co-workers, and usual work situations"); *Stephen D.*, 734 F. Supp. 3d at 738 (finding persuasive that "time-limited 'occasional' interactions in an unskilled work setting are reasonably understood to require only surface-level interactions" (citation omitted)). This conclusion neatly aligns with other caselaw indicating that an ALJ need not adopt the opinion of a medical expert "verbatim." *See Reeves*, 618 F. App'x at 275 ("[T]here is no requirement that an ALJ adopt a state agency psychologist's opinions verbatim; nor is the ALJ required to adopt the state agency psychologist's limitations wholesale."); *Mabry-Schlicher v. Comm'r of Soc. Sec.*, No.

24-3811, 2025 WL 1604376, at *5 (6th Cir. June 6, 2025) ("[A]n ALJ is not required to adopt a psychologist's limitations wholesale." (citing *Reeves*, 618 F. App'x at 275)); *Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 157 (6th Cir. 2009) ("Although the ALJ may not substitute his opinion for that of a physician, he is not required to recite the medical opinion of a physician verbatim in his residual functional capacity finding.").

Because the most persuasive cases and analyses suggest that terms like "occasional," "superficial," and "non-confrontational" are not substantively distinct, particularly when a claimant is limited to unskilled work, the Court rejects Claimant's argument. Thus, even if ALJ Hall (hypothetically) did not adequately explain her reasoning, she nevertheless did not err because she did not substantively depart from Dr. Perry's "non-confrontational" contact recommendation in making her "occasional" contact finding as part of Claimant's mental residual functional capacity determination.[9]

In sum, Claimant's objections to Judge Edwards's Recommendation fail for two reasons: (1) ALJ Hall adequately explained her reasoning in not incorporating Dr. Perry's non-confrontational limitation; and (2) even if ALJ Hall failed to sufficiently explain her reasoning, it is of no import, since "occasional" contact is substantively the same as "non-confrontational" contact (especially in the context of unskilled work) and an ALJ need not incorporate a medical expert's recommendation verbatim. For each of these reasons, Claimant's arguments fail.

---

[9] Alternatively, in light of this caselaw, the Court notes the possibility that ALJ Hall did *not*, in fact, outright reject Dr. Perry's "non-confrontational" contact recommendation. It is possible that ALJ Hall understood that non-confrontational contact is substantively the same as occasional contact and used the terms interchangeably.

## IV.    CONCLUSION

For the above-stated reasons, the Court finds that the Commissioner's decision is supported by substantial evidence in the record and complies with the applicable law and regulations. **IT IS HEREBY ORDERED** as follows:

1.    Magistrate Judge Regina S. Edwards's Report and Recommendation, [**R. 16**], is **ADOPTED** as the opinion of this Court to the extent not inconsistent with this Order. Claimant's objections, [**R. 17**], are **OVERRULED**.

2.    The final decision of the Commissioner is **AFFIRMED**.

3.    A separate Judgment will be entered consistent with this Order.

This the 17th day of July, 2026.

CLARIA HORN BOOM,
UNITED STATES DISTRICT COURT JUDGE
EASTERN AND WESTERN DISTRICTS OF
KENTUCKY